14 CV 9783

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

WELLS FARGO BANK, N.A., as Trustee,    §
§
    Interpleader Plaintiff,    §
§
v.    §    CIVIL ACTION NO. _____
§
WRIGHTS MILL HOLDINGS, LLC,    §
BROGNO, LLC, ETON PARK CAPITAL    §
MANAGEMENT, MONTROSE CREDIT    §
I, LLC, MONTROSE CREDIT II, LLC,    §
MONTROSE CREDIT III, LLC,    §
MONTROSE CREDIT IV, LLC,    §
WATERFALL ASSET MANAGEMENT,    §
MOISHE GUBIN, CEDE & CO., and    §
DOES 1 through 100, owners of beneficial    §
interests in the Notes,    §
§
    Interpleader Defendants.    §



RECEIVED
DEC 11 2014
U.S.D.C. S.D. N.Y.
CASHIERS

### INTERPLEADER COMPLAINT

Interpleader Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), in its capacity as Trustee

under the Indenture (the "Indenture") dated November 18, 2004, by and among itself, and Tropic

CDO IV Ltd. (the "Issuer") and Tropic CDO IV Corp. (the "Co-Issuer"; together, the "Co-

Issuers"), alleges and states that:

### INTRODUCTION

1.    This is an interpleader action brought to obtain adjudication of the rights of the

Interpleader Defendants with respect to certain assets held by Wells Fargo, in its capacity as

Trustee for the collateralized debt obligation governed by the Indenture (the "Tropic IV CDO").[1]

Wells Fargo faces competing demands by certain Interpleader Defendants with respect to a

certain item of Portfolio Collateral held by it on behalf of Tropic IV CDO's Co-Issuers, and

cannot determine, without hazard to itself, how to proceed.

---

[1] All capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Indenture.

## JURISDICTION AND VENUE

2.      This is an action for interpleader pursuant to Federal Rule of Civil Procedure 22. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because there is a diversity of citizenship between the Interpleader Plaintiff and all Interpleader Defendants, and the value of the disputed item of Portfolio Collateral exceeds $75,000 exclusive of interest and costs.

3.      Wells Fargo will not sell or otherwise dispose of the item of Portfolio Collateral at issue during the pendency of this action, so as to preserve the asset that is the subject of the dispute.

4.      Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(b)(3) because venue is not proper in any other judicial district and, upon information and belief, one or more Interpleader Defendants reside within this judicial district.

## PARTIES

5.      Wells Fargo is a national banking association with its main office in Sioux Falls, South Dakota.  Wells Fargo is the Trustee under the Indenture.

6.      Upon information and belief, Interpleader Defendant Wrights Mill Holdings LLC ("WMH") is a limited liability company organized and existing under the laws of the State of New York, and none of its members are citizens of South Dakota.  On information and belief, WMH holds 18,150,000 of the 27,000,000 Preferred Shares issued by Tropic CDO IV Ltd.

7.      Upon information and belief, Interpleader Defendant Brogno, LLC ("Brogno") is a limited liability company organized and existing under the laws of the State of Illinois, and none of its members are citizens of South Dakota.

8.      Upon information and belief, Interpleader Defendant Eton Park Capital Management ("Eton") is a limited partnership organized and existing under the laws of the State

of Delaware, and none of its partners are citizens of South Dakota.  Further upon information and belief, Eton is a Noteholder of certain Class A-1L, A-2L, and A-4L Notes issued by Tropic CDO IV Ltd.

9.  Upon information and belief, Interpleader Defendant Montrose Credit I ("Montrose I") is a limited liability company organized and existing under the laws of the State of Delaware, and its members are citizens of the Cayman Islands.  Further upon information and belief, Montrose I is a Noteholder of certain Class A-1L, A-2L, and A-4L Notes issued by Tropic CDO IV Ltd.

10.  Upon Information and belief, Interpleader Defendant Montrose Credit II ("Montrose II") is a limited liability company organized and existing under the laws of the State of Delaware, and its members are citizens of the Cayman Islands.  Further upon information and belief, Montrose II is a Noteholder of certain Class A-1L, A-2L, and A-4L Notes issued by Tropic CDO IV Ltd.

11.  Upon information and belief, Interpleader Defendant Montrose Credit III ("Montrose III") is a limited liability company organized and existing under the laws of the State of Delaware, and its members are citizens of the Cayman Islands.  Further upon information and belief, Montrose III is a Noteholder of certain Class A-1L, A-2L, and A-4L Notes issued by Tropic CDO IV Ltd.

12.  Upon information and belief, Interpleader Defendant Montrose Credit IV ("Montrose IV") is a limited liability company, organized and existing under the laws of the State of Delaware and its members are citizens of the Cayman Islands.  Further upon information and belief, Montrose IV is a Noteholder of certain Class A-1L, A-2L, and A-4L Notes issued by Tropic CDO IV Ltd.

13.     Upon information and belief, Interpleader Defendant Waterfall Asset Management ("Waterfall") is a limited liability company organized and existing under the laws of the State of Delaware, and none of its members are citizens of South Dakota.  Further, upon information and belief, Waterfall serves as the investment manager for certain clients that own Notes issued by Tropic CDO IV Ltd.

14.     Upon information and belief, Interpleader Defendant Moishe Gubin ("Gubin") is a natural person residing at 1230 Ridgedale Road, South Bend, Indiana 46614.  Upon information and belief, Gubin is the Chairman of OptimumBank Holdings Inc., an affiliate of the issuer of the item of Portfolio Collateral at issue in this case.

15.     Upon information and belief, Interpleader Defendant Cede & Co. ("Cede") is the nominee name of the Depository Trust Company, a limited purpose trust company organized under the laws of the State of New York.  Further upon information and belief, Cede is the registered Noteholder of record of the Notes at issue in this Interpleader Complaint, which Notes are held for the ultimate benefit of others.

16.     Upon information and belief, Interpleader Defendants Does 1 through 100 (the "Doe Defendants") are beneficial owners of (a) the interests in the Notes held by Waterfall and (b) the interests in the Preferred Shares held by other Preferred Shareholders, of whose names or true identities as owners of a specific Class or Classes of such Notes or Preferred Shares Wells Fargo is ignorant.  Upon information and belief, the Doe Defendants may have an interest in the dispute described herein by virtue of their status as beneficial owners of the interests in the Notes and Preferred Shares.

## BACKGROUND

17.    Wells Fargo, as Trustee, is a party to the Indenture, pursuant to which the Co-Issuers issued certain Notes, which Notes are secured by a pool of Portfolio Collateral.  The Issuer has also issued Preferred Shares that are not secured by the Portfolio Collateral but are entitled to the payment of proceeds thereof after payments of interest and principal are made on the Notes.

18.    The Portfolio Collateral includes, among other assets and accounts, certain Trust Securities, which are trust preferred securities issued by wholly-owned trust subsidiaries of certain bank holding companies; certain Bank Subordinated Notes issued by banks, thrifts or other depository institutions or their respective parent holding companies; and other similar securities, including all payments and proceeds received on the Portfolio Collateral.  Pursuant to the Indenture, the Co-Issuers pledged the Portfolio Collateral to Wells Fargo, in its capacity as Trustee, to secure their obligations under the Indenture.  Wells Fargo, in its capacity as Trustee, holds the Portfolio Collateral on behalf of the Secured Parties under the Indenture and collects the proceeds payable on such Portfolio Collateral, which proceeds are distributed to the Noteholders and the Preferred Shareholders pursuant to the terms of the Indenture.

19.    Section 10.3(d) of the Indenture requires that the Trustee notify the Preferred Shareholders of any Portfolio Collateral that is subject to an Offer.  With respect to any security, the Indenture defines an Offer to include "any offer by the issuer of such security or by any other person made to all of the holders of such class of security to purchase or otherwise acquire all such securities."

20.    Section 10.3(d) of the Indenture further provides that, if no Event of Default has occurred and is continuing and subject to Article XII of the Indenture, "Holders representing at least 66-2/3% of the Preferred Shares may direct the Trustee to release from the lien of this

Indenture such Portfolio Collateral in accordance with the terms of the Offer in each case against receipt of payment therefor."

21.     Section 12.2 of the Indenture provides in relevant part that, where an item of Portfolio Collateral is subject to an Offer (as described above), Preferred Shareholders representing at least 66-2/3% of the Preferred Shares may direct the Trustee to sell that item of Portfolio Collateral to a third-party, so long as the directing Preferred Shareholders certify to the Trustee that the sales price to be paid for such item of Portfolio Collateral is equal to or greater than the price available pursuant to the Offer.

## THE DISPUTE

22.     On or about July 25, 2014, Brogno sent a letter to the Issuer and Wells Fargo offering to purchase from the Issuer $5 million face amount of the trust preferred securities issued by Optimum Bank Holdings Capital Trust I (the "Security") for a purchase price of $500,000 (the "Brogno Offer").

23.     The Brogno Offer provided that, in the event the requisite amount of Preferred Shareholders directed the Trustee to accept its offer to purchase the Security, Brogno would pay an amount in cash (the "Consent Payment") directly to the Preferred Shareholders who had "directed" Wells Fargo to accept the Offer.  Upon information and belief, Brogno intended the phrase "directed" to refer to the direction contemplated by Section 10.3(d) of the Indenture.  The Brogno Offer further stated that, in the event its offer to purchase the Security was accepted, it would pay the corresponding Consent Payment *pro rata* to those Preferred Shareholders who had given the requisite direction to the Trustee.

24.     As of July 25, 2014 and through the date of the filing of this Interpleader Complaint, Wells Fargo has not received notice, nor does it have knowledge, that Tropic IV CDO has experienced an Event of Default, as that term is defined in the Indenture.

- 6 -

25.     Wells Fargo subsequently caused copies of the Brogno Offer to be delivered to, *inter alia*, the Preferred Shareholders. With its communication to the Preferred Shareholders, Wells Fargo also caused to be delivered a Notice of Offer and Request for Direction which included forms that could be completed by Preferred Shareholders and returned to Wells Fargo to direct Wells Fargo to accept the Brogno Offer. Copies of the Brogno Offer were also sent to Noteholders.

26.     On or about August 15, 2014, Wells Fargo received an email from Eton, which identified Eton as a Noteholder of certain Class A-1L, A-2L, and A-4L Notes issued by Tropic CDO IV Ltd. In its email, Eton objected to the offer made by Brogno to purchase the Security, claiming that the acceptance of the Brogno Offer would be improper, violate Eton's rights, and constitute a fraudulent conveyance.

27.     On or about August 25, 2014, Wells Fargo received a letter from Joseph Hage Aaronson LLC ("Joseph Hage"), which identified itself as the designated representative of Montrose I, Montrose II, Montrose III, and Montrose IV ("the Montrose Entities"). In its letter, Joseph Hage objected to the offer made by Brogno to purchase the Security, claiming that the acceptance of the offer would be improper, violate the Montrose Entities' rights, and cause irreparable harm. Joseph Hage asserted that accepting the Brogno Offer could constitute a violation of law, breach of contract, fraudulent conveyance, and aiding and abetting a breach of fiduciary duty.

28.     In its letter, Joseph Hage further claimed, *inter alia*, that the Consent Payments that were described in the Brogno Offer would be an improper payment to the Preferred Shareholders tantamount to "paying off the Preferred Shareholders who have no legitimate right to recovery on their junior investments at the expense of the Noteholders" for assisting "Brogno's looting of the preferred securities." Joseph Hage further took the position that, if the

Brogno Offer was accepted, the Consent Payments should be characterized as an asset of the Trust Estate of Tropic IV CDO for the benefit of Noteholders.

29.     On or about September 22, 2014, Brogno extended the Brogno Offer period through October 23, 2014 (the "September 22 Letter").  Wells Fargo subsequently caused a copy of the September 22 Letter to be delivered to, *inter alia*, the Preferred Shareholders and Noteholders.

30.     On or about October 14, 2014, WMH, in purported reliance upon Section 12.2 of the Indenture, instructed Wells Fargo to sell the Security to Gubin or his designee for a purchase price of $800,000 (the "October 14 Letter").

31.     In its October 14 Letter, WMH certified "pursuant to the requirements of Section 12.2 that the sales price for such Security is equal to or greater than the price available pursuant to the Offer and such sale will be treated as if the Offer or call were consummated for the purposes of determining the Collections for the Due Period relating to the date on which such sale occurs."

32.     Wells Fargo subsequently caused a copy of WMH's October 14 Letter to be delivered to, *inter alia*, the Noteholders.

33.     On or about October 31, 2014, Wells Fargo received a letter from Waterfall, which identified itself as the investment manager for "certain of its clients . . . which are registered holders of Notes issued by Tropic CDO IV Ltd."  In its letter, Waterfall objected to the proposed sale to Gubin, claiming that the sale would violate Section 7.8(c) of the Indenture. Waterfall further asserted that the Brogno Offer was not an "Offer" as that term is defined by Section 1.1 of the Indenture and, as a result, could not fall within or trigger Section 12.2 sale authority.  Moreover, Waterfall asserted that WMH's October 14 Letter was defective under

Section 12.2 because it directed the sale of the Security to Gubin's designee and, as a result, did not conclusively identify the actual buyer.

34.     In its letter, Waterfall further claimed, *inter alia*, that it believed that "Brogno and the Current Buyer are affiliated entities seeking to circumvent Section 10.3(d)."

35.     Waterfall expressly stated that it reserved its right to seek legal and equitable relief against Wells Fargo for any past or future breaches of the Indenture by Wells Fargo.

36.     On or about November 6, 2014, Wells Fargo received a second letter from Joseph Hage. In its second letter, Joseph Hage, again purporting to communicate on behalf of the Montrose Entities, objected to the proposed sale of the Security.

37.     Joseph Hage asserted that the sale of the Security to Gubin would be improper because, *inter alia*, it would defeat the purpose of the Indenture by allowing junior interests to defeat senior interests at any time, violate Section 12.2 due to deficiencies in the Brogno Offer, and facilitate the unlawful, collusive disposition of trust assets to the detriment of Noteholders.

38.     Joseph Hage asserted that it would suffer irreparable harm if the sale were consummated. As a result, it demanded that Wells Fargo, in its capacity as Trustee, reject the Brogno Offer and the direction to sell the Security to Gubin or, at minimum, seek a judicial determination of the proper course under the Indenture.

39.     Upon information and belief, Brogno and WMH are aware of some or all of the objections that certain Noteholders have made to the Brogno Offer and WMH's direction to sell the Security to Gubin. WMH has indicated that it believes that its direction to sell the Security to Gubin is proper and that Wells Fargo is obligated to consummate the sale on behalf of the Co-Issuers.

40.     Wells Fargo has notified Gubin that certain Holders have objected to the sale of the Security to him or his designee. Gubin has nonetheless informed Wells Fargo that he expects

Wells Fargo to sell the Security to him and has threatened to pursue legal action against Wells Fargo if it does not do so.

41.     As described above, Wells Fargo faces irreconcilable demands as to whether to sell the Security it holds to Gubin.  WMH and Gubin insist that Wells Fargo should sell the Security to Gubin, and have threatened or suggested that Wells Fargo could be liable if it fails to consummate the sale.  Eton, the Montrose Entities, and Waterfall, on the other hand, object to such sale, and have threatened or suggested that Wells Fargo could be liable if it sells the Security to Gubin.  Wells Fargo is therefore unable to determine, without exposing itself to risk of liability, how to proceed in respect of the proposed sale of the Security.

42.     Wells Fargo is ready and willing to proceed in respect of the directions contained in WMH's October 14 Letter and the Security in the manner in which the Court directs.

43.     As Trustee, Wells Fargo has no interest as a claimant in the Security that is the subject of this dispute, except to the extent its costs and disbursements, including legal fees and expenses, with respect to this action, as may be awarded by the Court.

44.     The above-entitled action is not brought by collusion with any of the Interpleader Defendants.

## PLEA FOR RELIEF

**WHEREFORE,** Wells Fargo asks this Court:

(i)     To order the Interpleader Defendants to interplead and to settle all claims related to the Security that is the subject of this dispute among themselves and any other persons who claim or may claim an interest, beneficial or legal, in such assets;

(ii)     To restrain Interpleader Defendants and all claiming through or acting with them, or claiming any interest in the Security, from commencing or prosecuting any separate proceeding against Wells Fargo concerning or relating to the issues in this action;

(iii)    To award Wells Fargo its costs and disbursements, including legal fees and expenses, with respect to this action and the distribution of proceeds in dispute; and

(iv)    To award Wells Fargo such other and further relief as the Court may deem just, proper, and equitable.

Dated: New York, New York
      December 11, 2014

ALSTON & BIRD LLP

By:    _____
    Michael E. Johnson
    90 Park Avenue
    New York, New York
    (212) 210-9400

*Attorneys for Interpleader Plaintiff*
*Wells Fargo Bank, N.A., in its capacity as*
*Trustee*

- 11 -